# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | )<br>)<br>) Case No. 1:08CR00024-035<br>) |
| v. | )<br>)<br>) **OPINION** |
| **MARTIN AVERY HUGHES**, | )<br>) By: James P. Jones |
| Defendant. | ) United States District Judge |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Martin Avery Hughes, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2010), alleging ineffective assistance of counsel, an involuntary guilty plea, prosecutorial misconduct, and sentencing error. Upon review of the record, I find that the defendant's motion must be denied.

I

A grand jury of this court returned a multi-count Indictment on May 28, 2008, charging that Martin Avery Hughes and fifty others conspired to distribute 50 grams or more of cocaine base and 500 grams or more of cocaine, in violation of 21 U.S.C.A. §§ 841(a)(1), 841(b)(1)(A), and 846 (West 1999 & Supp. 2010) (Count One). The government filed an Information pursuant to 21 U.S.C.A. § 851 (West 1999) on June 27, 2008, seeking to enhance Hughes' sentence based on his prior

felony drug convictions. Hughes reached a plea bargain with the government, and on October 27, 2008, he pleaded guilty pursuant to a written Plea Agreement. As part of the agreement, Hughes waived his right to appeal and to collaterally attack his conviction and sentence. He also stipulated that he had been convicted in Bristol, Virginia, in 1997 of possession with intent to distribute cocaine and that his prior felony convictions qualified him for a Career Offender enhancement under United States Sentencing Manual ("USSG") § 4B1.1. In exchange for the guilty plea, the government agreed to dismiss two additional prior convictions from the § 851 Information, which otherwise would have subjected Hughes to a mandatory life sentence pursuant to 21 U.S.C.A. § 841(b)(1)(A), and to recommend that he receive a reduction of two, and possibly three, offense levels under the advisory Sentencing Guidelines, based on his acceptance of responsibility.

After his guilty plea, Hughes learned that some of the government's witnesses in the case had recanted their prior testimony. He moved for appointment of a new attorney and sought to withdraw his guilty plea. The government then filed a Notice of Intent to Seek Remedies based on this violation of Hughes' Plea Agreement. After conferring with counsel, Hughes moved for withdrawal of his pro se motion to withdraw his guilty plea. I granted this motion, and denied Hughes' request for new counsel.

A sentencing hearing was held on March 2, 2009. The Presentence Investigation Report ("PSR") determined that Hughes should be held accountable for at least 50 grams of cocaine base, giving him a Base Offense Level of 30, adjusted

to 37 because of his status as a Career Offender. With a three-level reduction for acceptance of responsibility, the PSR calculated Hughes' Total Offense Level at 34. Because of Hughes' Career Offender status, the PSR assigned him Criminal History Category VI, giving him a sentencing range of 262 to 327 months of imprisonment. I sentenced Hughes at the bottom of that range, with the term of imprisonment to run concurrently with a prior state sentence of imprisonment and to be followed by five years of supervised release. Hughes did not appeal.[1]

Hughes filed this timely § 2255 motion, alleging that his attorney had been ineffective by failing to adequately investigate and prepare the case, by allowing him to plea guilty, and by not challenging the drug weight attributed to him. He also claims that his sentence is illegal for various reasons, and the government used perjured evidence against him to obtain the Indictment and conviction.[2]

---

[1] Hughes filed several post-judgment motions, seeking to dismiss the indictment, compel discovery, obtain free transcripts, and withdraw his guilty plea. I denied these motions by order entered March 3, 2010, and the United States Court of Appeals for the Fourth Circuit dismissed his appeal in part and affirmed in part. *United States v. Hughes*, No. 10-6417, 2010 WL 4386867 (4th Cir. Nov. 4, 2010) (unpublished).

In November 2009, Hughes filed a motion styled as "Application for Writ of Habeas Corpus under Title 28 U.S.C. 2255," but later informed the court by letter that he did not intend this submission to be considered as a § 2255 motion. By order entered February 4, 2010, I dismissed the motion without prejudice.

[2] Hughes also alleges, for the first time in his response to the Motion to Dismiss, that after sentencing, he tried to contact counsel "to [discuss] appeal offered by court of court['s] decision," but received no response. He thus faults counsel for failing to consult with him about the possibility of appealing his sentence.

To the extent that Hughes intended these allegations in his response to amend his § 2255 motion, I must deny the amendment. A person convicted of a federal offense has one year to file a § 2255 motion, pursuant to 28 U.S.C.A. § 2255(f). An amendment to a pending § 2255 motion, like an initial § 2255 motion itself, is subject to the one-year statute of

The government has filed a Motion to Dismiss, arguing that all claims must be dismissed as waived, pursuant to the Plea Agreement provision which waived the right to bring a collateral attack. Hughes has responded, making the matter ripe for disposition.

II

A. PLEA AGREEMENT WAIVER OF § 2255 RIGHTS.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether

---

limitations set forth in § 2255(f), unless the amendment relates back to a timely raised claim, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). "Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id*. at 659.

Judgment in Hughes' case was entered on March 3, 2009, and the conviction became final for purposes of § 2255(f)(1) on March 17, 2009. *See* Fed. R. App. P. 4(b) (2009) (requiring defendant's notice of appeal from criminal judgment to be filed within ten days after entry of judgment). He then had until March 17, 2010, in which to file a timely motion under § 2255. He filed his initial § 2255 motion on February 28, 2010, within the one-year filing limit, but did not present his claim that counsel failed to consult with him about an appeal. This claim was first raised in his response, signed and dated on July 1, 2010. Clearly, this claim was not raised within one year of March 17, 2009, when the conviction became final. Accordingly, the amendment is untimely under § 2255(f).

Hughes does not allege any facts indicating that his one-year filing period could be calculated under any of the other subsections of § 2255(f). Likewise, he does not state any reason that he could not have included in his initial § 2255 motion this claim of ineffective assistance regarding an appeal. Finally, the untimely filed claim does not relate back to a core of common operative facts related to any timely filed claim, as required for relation back under Rule 15(c). *See Mayle*, 545 U.S. at 659. For these reasons, I will not consider the merits of Hughes' claim that counsel was ineffective in failing to consult with him about an appeal.

the waiver is intelligent and voluntary depends "'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). When a defendant alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea and the plea agreement waiver of § 2255 rights. *See, e.g., Lemaster*, 403 F.3d at 221-22.

The court's waiver analysis must focus first on the defendant's statements during the plea hearing. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-22. If the court determines that the defendant's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotation marks and citations omitted).

### B. HUGHES' VALID GUILTY PLEA AND WAIVER.

Before accepting Hughes' guilty plea, I questioned him thoroughly to ensure that his plea was knowing and voluntary. Hughes stated that he was 37 years old and had received his GED. He denied that he had ever been treated for mental illness and confirmed that he was not under the influence of medication or alcohol. When I

asked Hughes if had received or seen a copy of the Indictment, he answered in the negative, although he admitted that he had discussed it with counsel. The prosecutor provided Hughes with a copy of the Indictment, and I advised Hughes to go over it with counsel, and adjourned his hearing temporality while he did so.

When I later asked Hughes if he had had an adequate opportunity to discuss the charges and his case in general with his lawyer, the following colloquy transpired:

| | |
|---|---|
| HUGHES: | We've discussed it. I think we could have went over some more things about it. |
| THE COURT: | Okay. |
| HUGHES: | But we have discussed it to length. |
| THE COURT: | Well, here's the deal, Mr. Hughes. I'm not going to accept your guilty plea until I'm satisfied that you're making a plea that's, you know, fully – with full knowledge. In other words, you have to be fully satisfied that you've thought about everything, that you've considered the advice that your attorney has given you, that you've asked any questions that you have, before I can accept your guilty plea; because otherwise, I could not in good faith accept a plea from someone who had some question about their situation.<br><br>So would you like to have a seat with your attorney, and I'll give you an opportunity to ask him any further questions that you have. |
| HUGHES: | Yes, I'd like an opportunity to speak with my attorney, please. |

>
> THE COURT: All right. Very good.

(Plea Tr. 12-13, Oct. 27, 2008, ECF No. 2564.)

A short time later, counsel advised me that Hughes was ready to proceed. I reminded Hughes that he had already been sworn to tell the truth and then advised him that it was important for him to fully understand the questions and to advise the court if he did not understand any question and needed to talk to his attorney. Hughes then affirmed that he had had adequate time to review the Indictment, and to discuss it, his case in general, and the Plea Agreement, with his attorney. He said that he had initialed each page of the Plea Agreement and signed it, indicating that he had read and understood its terms. The prosecutor then summarized the terms of the Plea Agreement, and Hughes stated that he understood and agreed to those terms.[3]

I specifically asked Hughes if he understood the provisions waiving his right to bring a collateral attack:

> THE COURT: Do you also understand that under the plea agreement[ ], you waive or give up your right to collaterally attack your sentence, meaning that you could not at a later time file a motion or petition

---

[3] As part of this summary, the prosecutor advised Hughes that by signing the Plea Agreement, he was indicating his intention to plead guilty because he was guilty and because he believed the guilty plea was in his best interests, and not because of any threats or promises. The prosecutor also advised Hughes that by accepting the Plea Agreement, he was indicating his full satisfaction with the representation provided by counsel. The summary also advised Hughes that under the agreement he faced a statutory mandatory minimum sentence of 20 years, and that he had stipulated to Career Offender status and a base offense level of 37.

|            | seeking to have your sentence set aside? Do you understand that? . . . . |
|------------|---|
| HUGHES:    | Yes, sir. |

(Plea Tr., 15-16, Oct. 27, 2008, ECF No. 2290.) Hughes denied that anyone had made any promise to him outside the Plea Agreement that caused him to want to plead guilty or that anyone had attempted to force him to plead guilty.

I advised Hughes of the maximum and statutory mandatory minimum sentences he faced, reviewed the rights he was waiving by pleading guilty, and explained in detail the elements of the charge that the government would have to prove if he went to trial. I specifically advised him that by pleading guilty, he was giving up his right to plead not guilty and his right to a trial by jury, during which he would be presumed innocent until proven guilty beyond a reasonable doubt and would have a right to confront the witnesses against him. He indicated that he understood that he was waiving these rights. When asked if he was pleading guilty because he was, in fact, guilty, Hughes answered, "Yes." (*Id.* at 22.) After the prosecutor offered a summary of the evidence in support of the plea, I asked Hughes, "[D]o you dispute or contest any of those facts?" Hughes answered, "No, sir," and went on to plead guilty to Count One. (*Id.* at 25-26.)

Hughes' statements during the guilty plea colloquy offered no indication that Hughes was not competent to enter a valid guilty plea, that he did not understand the proceedings, or that he was not voluntarily pleading guilty. I find now, as I did at the

plea hearing, that Hughes' guilty plea and the waiver of his right to bring this collateral attack under § 2255 were knowing and voluntary and therefore, valid.

C.  CLAIMS OF INEFFECTIVE ASSISTANCE.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Several of Hughes' claims allege that because of errors by his attorney, his guilty plea was not knowing or voluntary. These claims, however, are based on assertions which are directly contradicted by Hughes' statements under oath during the guilty plea hearing. His assertions about counsel's representation before the guilty plea — that counsel promised, but did not file certain pretrial motions, filed the Plea Agreement without Hughes' permission, and told him that he could withdraw the plea before sentencing and still try to prove his innocence — are directly contradicted by Hughes' plea hearing statements to the court. During this hearing, Hughes had

opportunity to advise the court of any aspect of the Indictment, the prosecution's case, the Plea Agreement, or the sentencing process that he did not understand, and of any dissatisfaction he had with counsel's representation. Yet, under oath, Hughes indicated that he fully understood the charge and the terms and consequences of the Plea Agreement, that he did not dispute the government's case against him, that he had no questions of the court, and that he was pleading guilty.

Based on the foregoing, I find that Hughes' claims of ineffective assistance leading to his guilty plea are so "palpably incredible" as to warrant summary dismissal, because they are based on assertions directly contradicted by his statements during the guilty plea hearing. *Lemaster*, 403 F.3d at 220-22. Furthermore, Hughes' claims that counsel provided ineffective assistance at sentencing have no bearing on the validity of his guilty plea and his Plea Agreement waiver of collateral attack rights. Because Hughes fails to demonstrate any ground on which that waiver is invalid, he is bound by the waiver.

Furthermore, Hughes offers no evidence on which he could prove that counsel's representation before the guilty plea was either deficient or prejudicial. *Hill*, 474 U.S. at 58-59. He has not presented any evidence suggesting that counsel acted unreasonably when he advised Hughes to accept the Plea Agreement as the best available option to limit his sentence exposure under the circumstances at the time of the plea. I also find no reasonable probability that absent counsel's alleged errors, Hughes would have rejected the Plea Agreement and insisted on going to trial. Hughes fails to present any information that counsel would have uncovered through

additional investigation or pretrial discovery motions which would have increased Hughes' chances of success at trial, given the extent of the government's evidence against him. On the other hand, by entering into the Plea Agreement, Hughes avoided the mandatory life sentence to which he would have been subject if convicted after a trial, based on his prior drug felony convictions, and achieved a further reduction in his offense level, based on his acceptance of responsibility.

Hughes also fails to present a reasonable probability that any different argument or evidence counsel could have presented at sentencing would have resulted in a lighter sentence than the one Hughes received. *Strickland*, 466 U.S. at 687. The PSR calculated his guideline range, using the amount of cocaine base charged in the Indictment to which he pleaded guilty, and applying the Career Offender guideline to which he stipulated in the Plea Agreement. I sentenced him at the bottom of that sentencing range. Thus, Hughes received the sentence for which he bargained in the Plea Agreement.

### D. REMAINING CLAIMS.

Hughes claims alleging court error and prosecutorial misconduct, are waived by Hughes' valid Plea Agreement waiver of his right to bring a § 2255 action.[4] *Lemaster*, 403 F.3d at 220. Hughes appears to believe that because certain government witnesses from the multi-defendant case recanted their grand jury testimony, the Indictment itself is rendered suspect and should have been dismissed,

---

[4] Moreover, because Hughes could have raised these claims on direct appeal, they are also procedurally barred from review under § 2255. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

and his guilty plea and waiver are thus automatically invalid. He is mistaken. Testing the credibility of the government's witnesses at trial was one of the rights that Hughes voluntarily waived when he entered into the Plea Agreement to escape a life sentence. The witnesses' recantations occurred after Hughes entered his guilty plea and thus had no bearing on the circumstances under which he bargained for the benefits of the agreement in exchange for admitting his guilt in open court.[5] He cannot now "disown his solemn admissions in open court," accepting a finding of guilt for the crimes charged, "simply because it later develop[ed] that the [prosecution] would have had a weaker case than [he] had thought." *Brady v. United States*, 397 U.S. 742, 757 (1970).

IV

In conclusion, I am of the opinion that the Motion to Dismiss must be granted and relief denied, based on the defendant's valid Plea Agreement waiver of the right to collaterally attack the judgment. Alternatively, I find that his claims are procedurally barred or without merit. A separate Final Order will be entered herewith.

---

[5] In any event, in other proceedings, I found that the witnesses' prior testimony, implicating codefendants in the drug conspiracy, was more credible than their recantations of that testimony. *See, e.g., United States v. Duty*, No. 1:08CR00024, 2009 WL 2424347 (W.D. Va. Aug. 6, 2009); *United States v. Baumgardner*, No. 1:08CR00024, 2009 WL 2424334 (W.D. Va. Aug. 6, 2009); *see also United States v. Vaughn*, No. 1:08CR00024, 2009 WL 2762159 (W.D. Va. Aug. 27, 2009) (denying motion to withdraw guilty plea); *United States v. Evans*, 635 F. Supp. 2d 455, 464 (W.D. Va. 2009) (same).

DATED: January 20, 2011

/s/ JAMES P. JONES
United States District Judge